UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:19-CR 00416 RWS |
| | ) |
| WILLIAM MILLER, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW, Defendant, William Miller, through his attorneys, The Hale Law Firm, by Larry D. Hale and submits the following memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory objectives of punishment. 18 U.S.C. Section 3553(a).

**I.  LEGAL STANDARD**

As this Court is aware, Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of punishment. 18 U.S.C Section 3553(a).  The United States Sentencing Guidelines, while advisory, "are no longer mandatory".  United States v. Ture, 450 f.3d 352, 356 (8th Cir. 2006); United States v. Booker, 543 U.S. 220, 224 (2005).

As the United States Court of Appeals for the Eighth Circuit has established, the methodology this Court should follow post-Booker is the following:

> "In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines ….. Next, the district court should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range …… The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines' …. The calculation of

1

the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" …. Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. Section 3553(a) justify a variance outside the final advisory Guidelines sentencing range …. As opposed to a departure, a "variance" refers to a "non-guidelines sentence" based on the factors enumerated in Section 3553(a)."

United States v. Lozoya, 623 F.3d 624, 625-26 (8th Cir. 2010) (citations omitted).

## II. GUIDELINES

Defendant's Total offense level under the sentencing guidelines is 14. See Paragraph No. 85 of Presentence Investigation report (PSI). Defendant's criminal history category is I, based upon a total point accumulation of 0. See Paragraph No. 89 of PSI. This combination subjects this Defendant to a sentencing range of 15 to 21 months. See Paragraph No. 120 of the PSI. Consistent with Paragraph No. 138 of the PSI, Defendant requests that this Court vary downward from the total offense level of 14 to a total offense level of 8, and sentence him to a term of probation.[1] This request is based upon Defendant's diagnosis and treatment for major illness and his limited role in the offense. Additionally, a downward variance is also warranted pursuant to 18 U.S.C. Section 3553(a).

Defendant has a verified diagnosis of a major disorder for which he has been treated since March, 2019. See Paragraph N. 97 of the PSI. Defendant's condition strongly supports a downward variance from the advisory guideline range.

---

[1] In Paragraph 138 of the PSI, the U.S. Probation Office stated that a downward variance may be warranted in this case based on the Defendant's diagnosis and treatment for a major health problem and limited role in the offense. The Government has accepted the PSI in this case, including the foregoing conclusion. See Doc # 17.

Defendant's role in the offense also supports a downward variance from the advisory guideline range.  It should be noted that Defendant has not benefited from a point reduction for his role in the offense, under Section 3B1.2 of the Federal Sentencing Guidelines.  However, his minimal role in the offense must be considered./2

Defendant pled guilty to a single charge of aiding and abetting Steven V. Stenger's scheme to defraud and deprive the Citizens of  St. Louis County of their right to honest services through the acceptance of campaign contributions in exchange for the award of contracts.   Defendant did not independently initiate actions related to the scheme.   Defendant did not participate in raising funds for the Stenger campaign.  He never engaged in communication with campaign donors promising County contracts in exchange for campaign donations.  It was not Defendant's decision to reward donors with County contracts. This was all done by Steven V. Stenger, who directed this Defendant and two other members of his executive staff to communicate to Sheila Sweeney, that Stenger wanted the St. Louis Economic Development Partnership's lobbying contract to be awarded to John Bardgett and Associates (hereinafter JBA).   Defendant's role in this offense was simply to communicate Stenger's directive to Sheila Sweeney and then to cast his vote in favor of the selection of JBA as a member of the Board of the St Louis Economic Development Partnership.

Defendant had no financial interest in  the JBA scheme, and was never to derive a financial benefit from it.  In fact, Steven V. Stenger had been exchanging campaign

---

/2  Defendant's role in the offense was minimal because he has been identified as the least culpable of those involved in the Stenger scheme. Defendant had little knowledge or understanding of the scope of the scheme beyond Stenger's direction to communicate to Sheila Sweeney that JBA was to get the lobbying contract and vote to approve it. Defendant knew little of campaign donations or history of the scheme.  Under Section 3B1.2 a four point reduction would be applicable.

contributions from JBA for lobbying contracts since November, 2014. See Paragraph No 3 of Exhibit A (Government Sentencing Memorandum in U.S. v. Stenger). This was long before this Defendant was hired to work as Stenger's Chief of Staff in December, 2017.

Defendant's role in the offense consisted of his doing what his boss told him to do. But Steven V. Stenger was no ordinary boss. As recently observed by Assistant U.S. Attorney, Hal Goldsmith, in the Government's Sentencing Memorandum in the case of U.S. v. Steven V. Stenger:

> "When a St. Louis County employee, a company seeking to do business with St. Louis County, or someone in the political world took an action which Stenger viewed as adverse to his own political ambitions, or as undercutting his authority and position of power as County Executive, he (Stenger) advocated strong retribution against that individual or company, including the threat of termination when it was a County employee. Just as …. (Stenger) favored his political donors in his criminal pay to play scheme, …… (Stenger) looked to punish those who crossed him politically or who refused to carry out his directives."

Paragraph No 4 of Exhibit A (the Government's Sentencing Memorandum in U.S. v. Stenger-Page 7).

Indeed, the Government's Sentencing Memorandum in the Stenger prosecution is full of examples of the vindictive actions taken by Stenger against county employees and others who failed to follow his directions or otherwise displeased him. See Paragraph No. 4 (Government Sentencing Memorandum in U.S. v. Stenger-Pages 7-9). At the sentencing hearing of Steven V. Stenger, Assistant U.S. Attorney Goldsmith, again described the control Stenger exercised over this Defendant and other members of the executive staff through intimidating behavior as follows:

> "Mr. Goldsmith: A couple other things I want to point out. Mr. Rosenblum makes light, if you will, or tries to make light of the words, the statements by this Defendant that were recorded throughout this investigation, and he referenced that they were statements to his closest friends. Judge, these were his top executive staff members that were beyond uncomfortable in having to carry out this Defendant's orders. This Defendant ….they were not his closest friends. These

4

> were individuals that, through this Defendant's intimidation and threats, had to carry out his orders and to help this Defendant accomplish his scheme. These are not statements made in light in a poker game amongst one's closest friends, and I think the Court needs to know that. I think we made that very clear in our sentencing memo, and certainly, the indictment, I believe, the grand jury's indictment, speaks to that…."

Transcript of Steven V. Stenger Sentencing, Page 27 (lines 4-19)

.       Thus, Defendant's boss was a "vindictive" person known to threaten to terminate or otherwise punish those who did not follow his directives.   These are the circumstances under which Defendant moved to follow the directions of Stenger concerning the JBA lobbying contract.  The always present understanding that termination from employment could result from a refusal to comply with Stenger's directions, was particularly effective on this Defendant, who had undergone severe financial hardship during 6 months of unemployment prior to taking the job as Stenger's Chief of Staff.   See Paragraph 113 of the PSI.  These circumstances are not offered to support a denial of criminal responsibility for the actions of the Defendant, who is extremely remorseful and fully accepts responsibility for his actions.  The foregoing is offered to show the Court the circumstances under which Defendant acted and that he was motivated by a desire to keep his job.

Assistant U.S. Attorney, Goldsmith, further reports in his Sentencing Memorandum in the Steven V. Stenger case, that:

> "….Stenger checked out during 2018, spending little time in his County Executive Office, while most of his focus was on fund raising for his own August primary and November general elections."

See Paragraph No 4 of Exhibit A (Government Sentencing Memorandum in U.S. v. Steven V. Stenger-Page 4).

5

While Stenger "checked out" in 2018, St. Louis County Government was substantially run by this Defendant, who was Stenger's Chief of Staff.

Finally, as pertains to Defendant's role in the offense, the U.S Probation office has determined that this Defendant is the least culpable of all of the persons charged in connection with the activities of County Executive, Steven V. Stenger.  See Paragraph No. 69 of the PSI and Doc # 17 (Government's Acceptance of PSI).

### III.     SECTION 3553(a)

As a matter of law, this Court must not presume the Guideline sentencing range reasonable, but must make an individual assessment of the 18 U.S.C. Section 3553(a) factors, based on all of the facts presented.  Gall v. United States, 552 U.S. 38, 50 (2007). Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  Section 3553(a) then lists seven factors that a sentencing court must consider.  Especially relevant to this case are the following factors:

A. Nature and Circumstances of the Offense and Offender Characteristics

Defendant's minimal role in the charged offense and his health related challenges are fully described above.  As demonstrated by several letters from longtime friends, employers, family members and professional associates, which have been filed with this Court, Defendant has been an exceptional family man, father, husband, son, employee and advocate for those in need.   Prior to his involvement in the charged offense, Defendant had lived a law abiding life, with no prior involvement in criminal conduct. To those who know him, Defendant's actions in this matter are an aberration.

Defendant was a licensed Attorney, who has voluntarily surrendered this license to practice law to the Missouri Supreme Court.  He was a partial financial supporter of his family, with his wife, but resigned from employment with St. Louis County in April, 2019.  Defendant had been a proud member of the St. Louis community, until suffering the terrible public embarrassment of being charged in this matter.   But as a man of true character, who suffered a misstep on the road of life, Defendant is recovering.  He has resumed working for his family's business, and is again contributing to the support of his wife and four children.  Two of these children are in college.

    B.   <u>Need for the sentence imposed To Protect the Public from Further Crimes by Defendant</u>

As noted earlier, this is the Defendant's first criminal conviction, and it will surely be his last.   Defendant is extremely remorseful and sorry for his role in the Stenger scheme.  This has been a terrible experience for Defendant and his family, and the public embarrassment has been unbearable.  It has had a negative impact on Defendant's health and has caused him great loss professionally and otherwise.  Since Defendant lived a completely law abiding life before his involvement in this scheme, it is clear that he will never become involved in criminal activity again.

    C.  <u>Kinds of Sentences Available</u>

Beyond a sentence of incarceration within the Sentencing Guideline range of 15 to 21 months, the requested downward variance can bring Defendant within Zone A and make him eligible for the imposition of a term of probation. Additionally, a downward departure from the total offense level of 14 to a total offense level of 9 to 11 would bring Defendant within Zone B and make him eligible for a sentence of probation with   some form of community confinement.   Incarceration is not an  appropriate sentence to impose

7

upon this Defendant given his health issues and role in the offense. Imposition of a term of probation under Zone A is the requested sentence. However, alternatively, a sentence of probation under Zone B with a period of home detention would be acceptable if probation under Zone A was not imposed.

    D.  <u>Need to avoid unwarranted sentencing disparities among Defendants</u>

As noted above, Defendant is the least culpable of all persons charged in connection with the misconduct of Steven V. Stenger. This Defendant is less culpable than Sheila Sweeney who was sentenced to a 3 year term of probation and a $20,000.00 fine on August 16, 2019 by U.S. District Judge Perry in U.S. v. Sheila Sweeney. Clearly, Defendant must be granted a downward variance and sentenced to a term of probation in order to avoid an extreme disparity between his sentence and that of a person deemed to be more culpable than he.

It is also important to note that two members of Stenger's executive staff who participated, with this Defendant, in efforts to communicate Stenger's directions to Sheila Sweeny, have not been charged with crimes and will not be. One of these two staff members also served on the Board that approved the selection of JBA for award of the lobbying contract. This is the same staff member who is identified in paragraph number 59 of the PSI as having worked with Stenger in November of 2014 to direct the same lobbying contract to JBA and who is identified in paragraph numbers 32, 35 and 41 as having worked with Stenger in connection with John Rallo related activity.

A total of at least 4 people who participated in the JBA scheme to defraud have not been indicted. See Paragraph No. 69 of PSI. Some of these unindicted individuals had been involved in multiple schemes dating back to November, 2014. To bring some

8

level of consistency between the non-prosecution of multiple culpable people and this Defendant, a downward departure and sentence of probations is clearly warranted.

## CONCLUSION

In light of the foregoing, Defendant requests that this Court vary downward from the total offense level of 14 to a total offense level of 8 and sentence him to a term of probation, and for such further and other relief as this Court deems just and proper.

Respectfully Submitted,
THE HALE LAW FIRM

_____/S/  Larry D. Hale_____
Larry D. Hale, #26997MO
Counsel for Defendant
1221 Locust, Suite 310
St. Louis, MO 63103
(314)231-3168
(314)231-4072 (Fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was electronically delivered to all counsel of record on this 26th day of August, 2019, through the Court's electronic filing system.

_____/S/   Larry D. Hale_____
Larry D. Hale
